LAURA CLAUSON FERREE, Cal. Bar No. 258127
JESSICA HILLER, Cal. Bar No. 308063
CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
511 D Street
Marysville, CA 95901
Telephone:  530.742.5191
Facsimile:  530.742.0491
Email:        jhiller@crla.org
                  lferree@crla.org

DAVID S. CANNON, Cal. Bar No. 209501
SNEHAL DESAI, Cal. Bar No. 309434
DANIEL R. FONG, Cal. Bar No. 311985
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:  415.434.9100
Facsimile:  415.434.3947
Email:        dcannon@sheppardmullin.com
                  sndesai@sheppardmullin.com
                  dfong@sheppardmullin.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALFORNIA

| | |
|---|---|
| JOYCE JEREMIAH, BETTY LANE, PAULINE FLACK, SARAH JUAREZ, BETH MARTIN, ROBERT MCMULLEN II, RIA HAGAN, ANDREW BLACKBURN, MICHAEL ROSE, BARTON SHAFER,<br><br>        Plaintiffs,<br><br>        v.<br><br>SUTTER COUNTY, CITY OF YUBA CITY,<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL**<br><br>1. 42 U.S.C. § 1983/Eighth Amendment/Cal. Constitution, Art. 1, § 17<br>2. 42 U.S.C. § 1983/Fourth Amendment/Cal. Constitution, Art. 1, § 13<br>3. 42 U.S.C. § 1983/Fourteenth Amendment/ Cal. Constitution, Art. 1, § 7<br>4. 42 U.S.C. § 1983/Fourteenth Amendment/ Cal. Constitution, Art. 1, § 7<br>5. 42 U.S.C. § 1983/Fourteenth Amendment/ Cal. Constitution, Art. 1, § 7<br>6. 42 U.S.C. § 1983/Fourteenth Amendment/ Cal. Constitution, Art. 1, § 7<br>7. Cal. Gov. Code § 11135 |

## INTRODUCTION

There are no public emergency shelters in Sutter County.  The vast majority of individuals who cannot afford permanent housing have no recourse but to sleep outside or in their cars.  Only a few find shelter with local nonprofit organizations, which are under-resourced and unable to serve the needs of the county's most at-risk residents.  Without shelter, many homeless residents of Sutter County have taken to living on the banks of the Feather River.  The residents of these encampments have found a modicum of comfort, safety, and privacy that they could not find on the streets of Yuba City or in the unincorporated areas of Sutter County, where many suffered routine harassment from law enforcement, often when they were most vulnerable and trying to sleep.

Despite the lack of safe alternatives and the overwhelming need for viable shelters, Sutter County and Yuba City have focused their efforts on mitigating the collateral effects of homelessness by enacting ordinances that make it a crime to camp anywhere in public, including in a car, in unincorporated Sutter County or in Yuba City.  Sutter County further prohibits camping on private property, even with the property owner's permission, for more than one night.  Almost immediately after voting to criminalize camping, Sutter County elected not to build a proposed emergency homeless shelter and directed the Sheriff's Department to begin immediate enforcement of the anti-camping ordinance.  In response, Sutter County sheriff's deputies distributed notices to homeless residents advising that they would begin enforcement in thirty days, and that they would treat property remaining in encampments as "abandoned," presumably to be destroyed.

Plaintiffs bring this suit to protect their constitutional rights: rights that will be violated if Sutter County and Yuba City are permitted to enforce their anti-camping ordinances without providing homeless residents a safe, viable alternative location in which to sleep.

## JURISDICTION AND VENUE

1.      This is an action for injunctive and declaratory relief and damages pursuant to 42 U.S.C. § 1983 based upon the violations of Plaintiffs' rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Jurisdiction exists pursuant to 28

1  U.S.C. §§ 1331 and 1343 based on 42 U.S.C. § 1983 and questions of federal constitutional law.

2  Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202. The

3  Court has jurisdiction over Plaintiffs' supplemental state law claims for declaratory and

4  injunctive relief pursuant to 28 U.S.C. § 1367(a).

5       2.     Venue is proper in the Eastern District because the events and conduct

6  complained of occurred in Sutter County.

7  **FACTUAL ALLEGATIONS**

8  **Sutter County's Anti-Camping Ordinance**

9       3.     In 2016, the Sutter County Board of Supervisors (the Board) identified the need to

10  address the problem of homelessness in the county as its second highest priority in a list of ten.

11  The Board prioritized homelessness in response to the increasing number of homeless

12  individuals in the County and a corresponding increase in the number of complaints from local

13  businesses and residents.

14       4.     In 2017, the Board, commissioned the "Sutter Homeless to Housing Project" (the

15  Project).  The Board directed the Project staff to gather data regarding the homeless population in

16  Sutter County, and local housing stock, and to develop and implement a plan to "manage" the

17  homelessness issue within the county.

18       5.     In January 2017, the Feather and Yuba Rivers flooded many of the areas where

19  Sutter's homeless residents reside.  Given the exigencies created by impending flooding, Sutter

20  County provided motel vouchers for many of the river bottoms residents while assuring them

21  that they would be able to recover their possessions after the flood waters subsided.  When the

22  vouchers expired, many individuals attempted to return to their camps at the river bottoms to

23  recover what they could of their possessions.  Despite the earlier assurances, these individuals

24  were unable to retrieve their possessions.  Upon information and belief, under the auspices of an

25  "environmental cleanup," most of these residents' possessions were destroyed by Sutter County

26  or its contractor, without notice to their owner or an opportunity for their owner to recover them.

27       6.     Until summer of 2017, Sutter County homeless residents had been accessing

28  potable water through water spigots located on county property near Whiteaker Hall, a location

COMPLAINT

within walking distance to many of the largest homeless encampments in Sutter County.  This water access point had been available for a long period of time, and many homeless residents had come to rely on these spigots as their sole source of drinking water.

7.   Starting in or around the summer of 2017, Sutter County staff removed the knobs from the spigots, apparently in order to stop homeless residents from accessing fresh water.  If such was their intent, they succeeded and many homeless residents were effectively unable that summer to access drinking water during triple digit temperatures, leading to at least one death from heat stroke, which, upon information and belief, was in part due to a lack of access to drinking water.

8.   More recently, one of the volunteers who helps provide weekly free lunches to homeless residents at Whiteaker Hall advised County staff that the volunteers had been opening the water spigots with vice grips in order to access water during the lunches.  Very soon thereafter, the water supply was completely shut off so that neither the volunteers nor homeless residents are able to access fresh drinking water at the site.

9.   After studying the homeless problem throughout the spring and summer of 2017, the Board authorized introduction of Ordinance 1640 (the ordinance), an amendment to the county's existing anti-camping ordinance, on September 26, 2017.  The second reading and adoption of the ordinance occurred at the next Board meeting on October 10, 2017.  As adopted, the ordinance reads in pertinent part:

**475-010 - PURPOSE**
The Board of Supervisors of the County of Sutter recognizes and finds that it is in the best interest of the public health, safety, and general welfare to regulate camping in the unincorporated areas of Sutter County and to provide a temporary homeless shelter for transient or homeless individuals within the community under the terms provided by this chapter.

**475-030 - NUISANCE DECLARED**
Camping in violation of this Chapter is hereby declared, by its very existence, to be a public nuisance.

(1) U*nlawful Camping*: It is unlawful and a public nuisance for any person to Camp, occupy Camp Facilities or use Camp Paraphernalia in the following areas:
a. Any Public Property except as provided in Section 475-040, or otherwise provided by ordinance;
b. Any private property unless:
1. Such use is authorized by the property owner; is limited to the property owner's

family and friends; and, does not exceed one night in duration; or
2. Such use is normally associated with, and incidental to, the lawful and authorized use of private property for residential or other purposes; or
3. Such use is expressly authorized by the Sutter County Zoning Code or other laws, ordinances, and/or regulations.

(2) *Unlawful Storage*: Except as authorized by permit pursuant to this section or otherwise provided by ordinance, it shall be unlawful for any person to store personal property, including Camp Facilities and/or Camp Paraphernalia, in any Park or public place.

(3) *Violation—Penalties*: Any person violating any of the provisions of this section shall be guilty of: (1) An infraction for the first offense which shall be punishable by a fine not to exceed fifty dollars ($50.00); (2) An infraction for the second offense which shall be punishable by a fine not to exceed seventy and five dollars ($75.00); and, (3) An infraction or misdemeanor for any subsequent offense which, upon conviction, shall be punishable by a fine not to exceed one hundred dollars ($100.00), by imprisonment in the County Jail not to exceed six months or by both such fine and imprisonment.

Sutter County Ord. §§ 475-010-475-050.

10.     The ordinance defines camping, camp facilities, and camping paraphernalia broadly as:

Camp or Camping means the erecting of, or occupying, Camp Facilities for the intended or apparent purpose of overnight occupancy; to use Camp Paraphernalia. *Camper* means one engaged in the act of Camping.

Camp *Facilities* include, but are not limited to, tents, huts, temporary shelters, trailers, vehicles, or any form of cover or protection from the elements other than clothing.

Camp *Paraphernalia* includes, but is not limited to, tarpaulins, cots, beds, blankets, bedding, bedrolls, mattresses, pads, sleeping bags, hammocks, lanterns, stoves, and similar equipment.

*Id*. at § 475-020.

11.     At the October 24, 2017 Board meeting, the Project staff and other county personnel presented the Board with a summary of findings, data from the most recent Point in Time Count[1], as well as a proposal for an emergency shelter location, whose opening would

---

[1] The Point-in-Time (PIT) count is a count of sheltered and unsheltered homeless persons on a single night in January. The U.S. Department of Housing and Urban Development (HUD) requires that jurisdictions who have formed local Continuums of Care (so that they may apply for federal housing assistance) conduct an annual count of homeless persons who are sheltered in emergency shelter, transitional housing, and Safe Havens on a single night. Continuums of Care also must conduct a count of unsheltered homeless persons in odd-numbered years. Each count is planned, coordinated, and carried out locally.  *See* https://www.hudexchange.info/programs/hdx/guides/pit-hic/#general-pit-guides-and-tools

COMPLAINT

1  correspond with the enforcement of the anti-camping ordinance that was approved at the

2  previous Board meeting.

3          12.     At that meeting, the Project staff noted that there are approximately 760 homeless

4  individuals in Sutter and Yuba Counties, approximately 331 of whom live in Sutter County.

5  Sutter County staff admitted at the Board meeting that this number likely understates the actual

6  homeless population given the transient nature of homeless individuals and the difficulty in

7  conducting an accurate count.

8          13.     Project staff determined that approximately 75% of individuals who are homeless

9  in Sutter County were residents of the County prior to experiencing homelessness.  The average

10 Sutter County homeless resident became homeless as a result of unemployment.  Many homeless

11 residents lost their jobs during the 2008 recession.  Staff found that the majority of Sutter County

12 homeless residents live near the Feather River encampments.

13         14.     The study determined that only 8% of Sutter County's housing stock is available

14 for rent, which is well below the statewide average of 15%.  On average, rental housing costs

15 approximately $846.77 per month, with an initial move-in cost of anywhere from $1,399.57 to

16 $1,707.14.  This data evidences the dearth of available housing in the relevant area, particularly

17 for low-income individuals.

18         15.     The Project staff found that approximately 73% of homeless individuals

19 experience at least one mental or physical disability or chronic health condition yet only a small

20 fraction receive treatment for their disability.  The Project found that the average Sutter County

21 homeless resident makes approximately $441.82 per month (although 47% of those interviewed

22 reported no regular income).  This income is comprised primarily of Social Security benefits,

23 gathering and returning recyclable materials, and panhandling.  This total also includes the

24 CalFresh benefit, which causes average income to appear higher than it actually is, given that the

25 CalFresh benefit can only be used to purchase food and is not available for housing expenses.[2]

26 _____

27 [2] CalFresh is known colloquially as "food stamps."  Currently, a household of one individual
   qualifies for up to $192 in food stamps per month.  Accordingly, after subtracting that benefit,
28 the average monthly income of a Sutter County homeless resident is approximately $250 per
   month.

COMPLAINT

16.     County staff proposed to repurpose an existing county-owned building known as "Whiteaker Hall" into a long-term homeless shelter.  The building is located in Yuba City, near the river bottom area where the majority of Sutter County homeless residents currently live in encampments.  According to the proposal presented to the Board, the county could house between sixty and ninety individuals and could add additional tents or other options in the future were the need to exceed the space initially constructed.  Upon completion of the building's repurposing, homeless residents living on the river bottoms would be relocated to the shelter and given services designed to "guide them towards permanent housing and self-sufficiency."  Sutter County homeless residents could stay at the shelter for sixty to ninety days, with potential extensions if they were participating in services.

17.     County staff proposed to fund the shelter through a U.S. Community Development Block Grant (CDBG) for tenant/capital improvements and an initial CDBG grant for operating costs, in-kind donations from local nonprofits who would provide services on-site, and community donations and other grants.

18.     Once the shelter was operational, staff would start river bottoms vegetation removal and trimming and debris and environmental clean up.

19.     On October 24, 2017, the Board chose not to approve the proposed Whitaker Hall emergency shelter location.  Instead, the Board directed staff to amend the proposed Homeless Management Plan as follows:

- To direct staff to return with recommendations for other locations;
- To conceive of a homeless shelter to serve "needy and unsheltered" citizens of Sutter County;
- To limit the number of homeless individuals in any future shelter to sixty;
- To strictly adhere to a ninety-day time limit on shelter stay, with no exceptions permitted;
- *To direct Sheriff's Office "to begin immediate enforcement of camping ordinance, regardless of consequences."*
- To "remove individuals from homeless shelter who have a criminal background or are vagrants and request that they leave or arrest them."

- To use federal and state funding to complete the shelter and local funds for clean up of the river bottoms;

- To continue to work with the area's nonprofit agencies;

- To limit the term of the homeless shelter not to exceed two years;

- To direct that, if policies are not being adhered to at the homeless shelter, the shelter will be closed immediately;

- To ensure that the shelter would only to be open for limited hours of operation – evening to morning;

- To require that the Board of Supervisors approve any final homeless shelter facility.

20.   Despite the fact that the amended ordinance found that "it is in the best interest of the public health, safety, and general welfare to regulate camping in the unincorporated areas of Sutter County and to provide a temporary homeless shelter for transient or homeless individuals within the community," Sutter County has failed to provide for a temporary homeless shelter. Although the ordinance authorized the Board of Supervisors to designate a 'landing pad', upon information and belief, the Board has not designated any landing pad.

21.   During the Board's deliberations, Supervisor Sullenger stated that the county should only provide services to individuals who were originally from Sutter County.  Supervisor Sullenger further stated that "if you came here, I think you should also be told you can leave here" because such "derelicts…who have chosen the homeless life for themselves" did not want help but rather have "embedded themselves in the homeless, trying to get homeless benefits and homeless sympathy."

22.   Chairman Flores noted that "the people that are permanently homeless that we call the 'vagrants'…we want them to leave the river bottoms...we do agree we want them to go and its fine with me if we kick them out of the county, I don't care about lawsuits at all. I'd rather go down there and say 'hey you can leave right now because you're a vagrant, you're lawless, and you can take off."

23.   Supervisor Munger described homeless residents living in river bottoms encampments as pedophiles.  He stated, "we've got these pedophiles, they're in the levy, they're

COMPLAINT

1    over the levy, and they're on the levy."

2        24.     Starting on or about December 6, 2017, Sutter County sheriff's deputies

3 circulated an undated notice to the unsheltered homeless population in Sutter County.  Multiple

4 residents were handed copies of the notice and were photographed by sheriff's deputies without

5 their permission.  Another resident found a copy on the ground near her camp.  There are also

6 reports that sheriff's deputies gave several residents a laminated copy of the notice and told the

7 residents to circulate it amongst themselves.

8        25.     The undated notice cites ordinance 475-1640, which incorrectly cites the

9 ordinance number.  The notice states that enforcement of the ordinance will begin in thirty days,

10 but since the notice is undated and was circulated on varying days, the date of proposed

11 enforcement is unclear.  The notice further states that any property left on public property after

12 the end of the thirty-day notice will be subject to seizure as abandoned property and will be

13 disposed of accordingly.

14        26.     On March 8, 2018, Sutter County deputies circulated a new version of the notice

15 stating that enforcement of the ordinance will begin in ten days, again stating that camps and

16 property left in the area will be subject to seizure as abandoned property and disposed of

17 accordingly. The notice appears to be a copy of the earlier thirty-day notice with the "3" in "30"

18 marked through with a "1" to make it a ten-day notice instead.

19                      **City of Yuba City's Anti-Camping Ordinance**

20        27.     In 2014, the City of Yuba City Council amended their anti-camping ordinance to

21 prohibit camping on private property without written permission from the owner.

22        28.     Yuba City's Ordinance provides in pertinent part that:

23 Sec 5-20-030.  -Camping on public property.

24 It is unlawful for any person to camp in or upon any public property or public
right-of-way within the City, unless otherwise specifically authorized by this
Code or by resolution of the City Council.

25 …

26 Sec. 4-20-050. – Camping on private property.

27 (a) [Prohibited.] It is unlawful to camp upon any private property within the City.
(b) Exceptions.  This section shall not apply to persons camping with the written
consent of the owner, provide that such written consent is in their possession at

28 the time and is show upon demand of any peace officer.

COMPLAINT

Yuba City Ord. Ch. 20, §§ 5-20.030, 5-20.050.

The ordinance broadly defines camping as,

…residing in or using property for one or more nights for living accommodation purposes, such as sleeping activities, or making preparations to sleep (including the laying down of bedding for the purpose of sleeping), or storing personal belongs (including but not limited to clothing, sleeping bags, bedrolls, blankets, sheets, luggage, backpacks, kitchen utensils, cookware, and similar material), or making any fire or using any tents, regularly cooking meals, or living in a parked vehicle.  These activities constitute camping when it reasonably appears, in light of all the circumstances, that a person(s) is using property, as a living accommodation for one or more nights regardless of his or her intent or the nature of any other activities in which he or she might also be engaging.

Yuba City Ord. Ch. 20, § 5-20.020.

29.     Yuba City police officers have written multiple tickets to homeless residents who they have deemed are in violation of their anti-camping ordinance.  Upon information and belief, Yuba City has a policy and practice of encouraging Sutter County homeless residents residing within city limits to leave the city and camp instead on unincorporated Sutter County property near the Feather River bottoms.

30.     As a result of being told that they would be cited if they stayed in Yuba City and the policy of encouraging them to move to the river bottoms, many homeless Sutter County residents relocated to their current encampments.

31.     Now, these residents are being told that they will also be cited by Sutter County if they remain in their current encampments.  Individuals who are camping in their cars at night violate both jurisdictions' ordinances.

**Lack of Emergency Shelter in Sutter County**

32.     There are only two private emergency shelter providers in Sutter County: the Regional Emergency Shelter Team (REST) Program and Casa de Esperanza.  Both shelters have eligibility restrictions and have very limited capacity.

33.     The REST program is a faith-based winter-only shelter which houses approximately thirty individuals in cots at different churches in Sutter and Yuba Counties.  The REST program admits only couples and women.  Single men are ineligible for services.  Residents must gather at the local homeless day-shelter in the evening with a single bag, where

COMPLAINT

they are transported to the Church that is providing shelter that evening.  Residents are returned to the day-shelter the following morning.  The program is unable to accommodate individuals with physical or mental disabilities who cannot sleep in a group setting on cots due to mobility or other medical issues. The program typically provides emergency shelter from December through April and is closed the remainder of the year.

34.     Casa de Esperanza provides a combination of emergency and transitional shelter, but its beds are limited to victims of domestic violence, human trafficking, or child abuse.  If an individual does not fall within one of these categories, the individual is ineligible for shelter.  Casa de Esperanza has a twenty-three-bed capacity.  It is currently full and almost always operates at full capacity.

35.     Several additional organizations provide limited emergency shelter in neighboring Yuba County.  These programs likewise have eligibility restrictions and generally operate at full capacity.  14Forward, Yuba County's "tiny house" shelter is currently restricted to Yuba County residents and has a significant wait list for admission.  The Twin Rivers Rescue Mission is a faith-based shelter for men only which requires attendance at religious services.  It currently has one open bed.  The Salvation Army Depot (Depot) program focuses on individuals with substance abuse issues and generally operates at full capacity; it rarely offers emergency shelter.  It requires residents to participate in a six-month program.  The Depot does not admit single men.

**PLAINTIFFS**

36.     Joyce Jeremiah is a United States citizen residing in Yuba City, California.  She is homeless within the federal definition provided by 42 U.S.C. § 11302.

37.     Ms. Jeremiah is seventy-five years old and in very poor health.  In 2009, she had a heart attack and open-heart surgery.  While in the hospital, Ms. Jeremiah contracted a MRSA infection and was placed in isolation for three months at Rideout Hospital.  In approximately 2010, Ms. Jeremiah was diagnosed with stage 4 breast cancer, for which she had extensive chemotherapy and radiation treatment.  Ms. Jeremiah's cancer currently is in remission, but she has to see doctors regularly to ensure that her cancer has not returned. Ms. Jeremiah also suffers

from kidney and liver damage as a result of being given excessively high doses of antibiotics by her doctors.

38.     Before her heart attack, Ms. Jeremiah worked as a greeter at the local Walmart store.  After her heart attack she was unable to continue working.  Her only income is her social security retirement benefit.

39.     Ms. Jeremiah has lived in the Sutter area since she was seven years old.  For more than thirty years, she owned a home in Live Oak.  In 2017, she lost her home when she was unable to make her mortgage payments, despite depleting her savings and 401K savings.  She was unable to afford her mortgage payment once she could no longer work.

40.     Since losing her home, Ms. Jeremiah has lived in her car with her two cats, her dog, and her disabled son who needs daily assistance as a result of his disabilities.

41.     Ms. Jeremiah fears that she will be cited under the anti-camping ordinance.  Sutter County sheriff's deputies have told Ms. Jeremiah on three occasions that she needs to "go back where [she] came from."  They have also told her that she cannot park and sleep at the locations where they found her.

42.     If Ms. Jeremiah is prohibited from sleeping in her car, she will have nowhere else to live.  She will also be unable to take care of her disabled son.  Ms. Jeremiah is afraid that she will be cited and arrested under the anti-camping ordinance despite there being no alternative location for her to sleep.  She also fears that her vehicle will be impounded and she will lose her possessions and medication.

43.     Beth Martin is a United States citizen residing in Yuba City, California.  She is homeless within the federal definition provided by 42 U.S.C. § 11302.

44.     Ms. Martin is fifty years old and has lived in Sutter County her entire life.  She lived in her previous apartment at Palm Gardens in Yuba City for nineteen years.  Ms. Martin was an assistant manager for part of the time she lived at Palm Gardens.  Her rent was subsidized with a federal housing choice (section 8) voucher[3] which she has had since 1996.  In February of

---

[3] The housing choice voucher program (frequently referred to as "Section 8") is a federal government program for assisting very low-income families, the elderly, and the disabled to afford decent, safe, and sanitary housing in the private market. Since housing assistance is

COMPLAINT

2016, the complex was sold, and the new owner evicted all existing tenants in order to remodel the complex.  Ms. Martin moved out after receiving a notice of termination of tenancy in order to avoid an eviction on her record and to preserve her section 8 voucher.  Unfortunately, Ms. Martin was unable to find new housing that would accept her voucher, and she ultimately lost her voucher based on her inability to secure other housing.  Without the section 8 voucher, Ms. Martin has no financial ability to secure permanent housing.

45.     Ms. Martin is disabled.  She is diagnosed with anxiety, depression, insomnia, and bipolar disorder.  Ms. Martin sometimes hears voices that other individuals do not hear.  Although Ms. Martin was an In-Home Supportive Services provider for twenty years, her disability ultimately made it impossible for her to continue working.  Ms. Martin applied for Supplemental Security Income (SSI) benefits in 2017.  She missed a phone appointment after her cell phone was stolen, and her SSI application was denied.  She has since reapplied for SSI and is waiting to see if she will be approved.  Ms. Martin has no source of income while she waits for this application to be processed.

46.     When Ms. Martin originally became homeless, she would sleep in Yuba City, but was regularly woken up by Yuba City police and told she could not sleep in the city.  One of her friends advised her that if she moved to the river bottoms she would be able to avoid being harassed by police.

47.     Ms. Martin has tried to access emergency shelter by contacting Yuba City Police and asking to be given a ride to Yuba-Sutter Mental Health.  She was ultimately dropped off at the Salvation Army Depot in Yuba County where she was turned away because it was after check-in time.

---

provided on behalf of the family or individual, participants are able to find their own housing, including single-family homes, townhouses and apartments.  The participant is free to choose any housing that meets the requirements of the program and is not limited to units located in subsidized housing projects.  Housing choice vouchers are administered locally by public housing agencies (PHAs). The PHAs receive federal funds from the U.S. Department of Housing and Urban Development (HUD) to administer the voucher program.  See https://www.hud.gov/topics/housing_choice_voucher_program_section_8.  The Regional Housing Authority administers housing choice vouchers available in Sutter, Yuba, Colusa, and Nevada Counties.  There is a long waitlist to obtain a voucher and the waitlist is closed, so new applicants are unable to apply to be on the waitlist.

COMPLAINT

48.   Ms. Martin has nowhere else to sleep except her encampment.  She fears that she will be cited and arrested under the ordinance despite there being no alternative location for her to sleep.  She also fears that she will lose her possessions, which she stores at the camp.

49.   Pauline Flack is a United States citizen residing in Yuba City, California.  She is homeless within the federal definition provided by 42 U.S.C. § 11302.

50.   Ms. Flack is forty-one years old and has lived in the Sutter/Yuba area her whole life.  She became homeless when her estranged husband kept the money she gave him for rent rather than pay their landlord.  Ms. Flack was then evicted for failure to pay rent.  This eviction is reported on her credit report and has made it difficult for her to find housing.

51.   Ms. Flack is diagnosed with autism, attention deficit disorder, and dyslexia and has two emotional support animals.  Due to these disabilities, she was unable to complete her high school education.  She receives SSI, but this is insufficient for her to afford rent in the Yuba-Sutter area, or pay the initial deposit.

52.   Ms. Flack currently lives in a tent in the river bottoms in Sutter County.  Ms. Flack has nowhere else to sleep except for her encampment.  She fears that she will be cited and arrested under the ordinance despite there being no alternative location for her to sleep.  She also fears that she will lose her possessions, which she stores at her camp.

53.   Sarah Juarez is a United States citizen residing in Yuba City, California.  She is homeless within the federal definition provided by 42 U.S.C. § 11302.

54.   Ms. Juarez is fifty-six years old and has lived in Sutter County for twenty-nine years.

55.   Ms. Juarez has been homeless sine 2001 because she could not afford to pay her rent.  Since losing her housing in 2001, Ms. Juarez has been living on the river bottoms in Sutter County.  Ms. Juarez keeps her personal possessions at her encampment, including two laptop computers and her family photos.

56.   Ms. Juarez has carpal tunnel and back pain.  Ms. Juarez's disabilities cause her significant pain and make it difficult for her to find gainful employment.  Without work she has ///

no financial ability to secure permanent housing and she is physically unable to move her possessions from where she currently lives.

57.     Ms. Juarez has nowhere else to sleep except for her encampment.  She fears that she will be cited and arrested under the ordinance despite there being no alternative location for her to sleep.  She also fears that she will lose her possessions, which she stores at her camp.

58.     Betty Lane is a United States citizen residing in Yuba City, California.  She is homeless within the federal definition provided by 42 U.S.C. § 11302.

59.     Ms. Lane is seventy years old.  She moved to Sutter County in 2008 when she purchased a house located in Sutter County.  Due to a legal dispute over title to the property, Ms. Lane was evicted from the property in approximately 2016.

60.     Ms. Lane's only income is her social security retirement benefit.  This benefit is inadequate to pay the deposit and rent for an apartment in the Yuba-Sutter area.  Because she cannot afford to pay rent with her income, Ms. Lane currently lives in her car with her two dogs.

61.     Ms. Lane has nowhere else to sleep besides her car.  If Ms. Lane is prohibited from sleeping in her car, she will have nowhere else to live.  Ms. Lane is afraid that she will be cited and arrested under the anti-camping ordinance despite there being no alternative location for her to sleep.  She also fears that her vehicle will be impounded and she will lose her possessions.

62.     Robert McMullen II is a United States citizen residing in Yuba City, California.  He is homeless within the federal definition provided by 42 U.S.C. § 11302.

63.     Mr. McMullen is thirty-four years old and has lived in the Sutter County area since his family moved to the area when he was eight.

64.     Mr. McMullen is disabled.  He has learning disabilities and attention deficit disorder, as well as other disabilities that make him unable to sustain gainful employment. Mr. McMullen's only income comes from his monthly SSI benefit as a result of these disabilities.

65.     Mr. McMullen has been homeless since he moved out of his parent's house approximately twelve years ago.  Mr. McMullen has been unable to find housing that he can afford with his fixed income.  Mr. McMullen has tried multiple times to apply for a federal

COMPLAINT

1  housing choice (section 8) voucher, but each time he has gone to apply even the waitlist for

2  vouchers has been closed.  Mr. McMullen and his fiancé, Ria Hagan, were recently accepted to

3  the Sutter County rapid rehousing program, but they have still been unable to find housing due to

4  the housing stock shortage in Sutter County.

5      66.  Mr. McMullen and his fiancé have tried to gain access to emergency shelter in the

6  Yuba-Sutter area.  They cannot stay at the REST program because the group setting agitates Mr.

7  McMullen's disabilities, and causes his fiancé to have anxiety attacks.

8      67.  Mr. McMullen has camped outside in various locations in Sutter County and

9  Yuba City.  Whenever Mr. McMullen would try to sleep in Yuba City, he would be harassed by

10  Yuba City police.  The police would tell Mr. McMullen that if he wanted to avoid being bothered

11  by law enforcement, he should sleep in the river bottoms.

12      68.  Mr. McMullen currently lives with his fiancé in a tent on the river bottoms in

13  Sutter County.  Mr. McMullen and his fiancé keep all of their possessions at their camp.  Mr.

14  McMullen has nowhere else to sleep or store his possessions except for his encampment.  He

15  fears that he will be cited and arrested under the ordinance despite there being no alternative

16  location for him to sleep.  He also fears that he will lose all of his possessions.

17      69.  Ria Hagan is a United States citizen residing in Yuba City, California.  She is

18  homeless within the federal definition provided by 42 U.S.C. § 11302.

19      70.  Ms. Hagan is thirty-five years old.  She moved to Sutter County two years ago in

20  order to live with her fiancé, Robert McMullen II.  Mr. McMullen was homeless when Ms.

21  Hagan arrived, and both have been homeless since.

22      71.  Ms. Hagan is disabled.  She has diabetes, unexplained seizures, PTSD, and

23  anxiety.  Ms. Hagan has seizures on daily basis.  She has applied for SSI based on her

24  disabilities, but has been advised by her attorney that she will likely not have a hearing to

25  determine her eligibility for at least a year.

26      72.  Ms. Hagan currently lives with her fiancé in a tent in the river bottoms in Sutter

27  County.  They have applied and been denied access to Yuba County shelters including

28

COMPLAINT

14Forward and the Twin Cities Rescue Mission.  Ms. Hagan cannot stay at the REST program because the group sleep setting causes her to suffer anxiety attacks.

73.     Ms. Hagan desperately wants to move into permanent housing since living outside in the elements negatively affects her disabilities.  But, she and her fiancé have been unable to secure permanent housing despite submitting numerous applications.  This is primarily due to the fact that most housing providers require that a household make a minimum of two times the rent, which is impossible with her fiancé's fixed income and Ms. Hagan's lack of income.

74.     Ms. Hagan has nowhere to sleep except for her encampment.  She fears that she will be cited and arrested under the ordinance despite there being no alternative location for her to sleep.  She also fears that she will lose her possessions, which are stored at the camp.

75.     Michael Rose is a United States citizen residing in Yuba City, California.  He is homeless within the federal definition provided by 42 U.S.C. § 11302.

76.     Mr. Rose has lived in or near Sutter County since 1974 when he was adopted as a three-year-old by his family who lived in neighboring Colusa County.

77.     Mr. Rose is disabled.  He is diagnosed with anxiety and type-two diabetes.  He experiences severe side effects from his diabetes including painful swollen feet which make it difficult for him to travel any significant distance.  Mr. Rose receives SSI and disability income as a result of his disabilities.

78.     Although Mr. Rose has experienced homelessness in the past, Mr. Rose recently became homeless in 2017 after he left his position as volunteer site manager at the 14Forward shelter in Yuba County.  Mr. Rose did not receive any income for his position as site manager, but was afforded a fifth wheel mobile home as a residence while acting as site manager.  Mr. Rose had to leave his position because acting as a manager for the homeless shelter was causing him to suffer increasing anxiety.  Upon leaving 14Forward, Mr. Rose had originally intended to move to New Jersey, where his sister was living at the time.  But, Mr. Rose's sister moved and could not accommodate him in her new residence.

79.     Mr. Rose's disability makes it difficult for him to stay at any shelter, as the group setting exacerbates his anxiety.  Further, he has three cats which are his assistance animals.  Mr.

Rose is aware that most shelters will not take his cats, and he cannot be separated from them without having a negative impact on his disabilities.

80.     Mr. Rose has been trying to secure permanent housing since he left his position at 14Forward.  He has applied and is on the waitlist for low-income housing at the Regional Housing Authority.  The Regional Housing Authority has advised Mr. Rose that it will be a minimum of a year before he will be considered for housing.  Mr. Rose has tried to secure other housing, but has been unable to find any that he can afford on his fixed income.

81.     Mr. Rose currently lives on the river bottoms in Sutter County.  He keeps many of his possessions at his camp.  Mr. Rose has nowhere else to sleep or store his possessions except for his encampment.  He fears that he will be cited and arrested under the ordinance despite there being no alternative location for him to sleep.  He also fears that he will lose his possessions.

82.     Andrew Blackburn is a United States citizen residing in Yuba City, California. He is homeless within the federal definition provided by 42 U.S.C. § 11302.

83.     Mr. Blackburn is fifty-two years old and has lived his whole life in Sutter and Yuba Counties.  Mr. Blackburn worked various manual labor jobs to support himself and his fiancé.  Six years ago, Mr. Blackburn's fiancé had a stroke and he stopped working to take care of her.  Without income, he and his fiancé were unable to pay rent, and moved out of their apartment after receiving a notice to terminate tenancy.  They moved out prior to receiving an eviction judgment because a judgment would present a further barrier to finding permanent housing.

84.     During the past six years, Mr. Blackburn has lived primarily on the river bottoms in Yuba County.  He moved to Sutter County approximately a year ago, when Yuba County cleared out the encampment where he was living.

85.     Mr. Blackburn has tried to find work since becoming homeless, so that he can earn enough income to move back into permanent housing.  Despite searching for jobs regularly, Mr. Blackburn has been unable to find sustainable employment.

86.     Mr. Blackburn currently lives in a tent on the river bottoms in Sutter County.  Mr. Blackburn has nowhere else to go, and fears that he will be cited and arrested under the

1  ordinance despite there being no alternative location for him to sleep.  He also fears losing all his

2  possessions, which are stored at his camp.

3      87.    Barton Shafer is a United States citizen residing in Yuba City, California.  He is

4  homeless within the federal definition provided by 42 U.S.C. § 11302.

5      88.    Mr. Shafer is thirty-eight years old.  He moved to Sutter County in 2003 in order

6  to live closer to family who lived in the area.  Mr. Shafer worked for two construction companies

7  in Yuba City—Homes Construction and Allen Tech.  During this time, Mr. Shafer was on

8  parole, and the reporting duties imposed on him as a condition of parole interfered so frequently

9  with his work that both companies chose to terminate his employment.  As a result, Mr. Shafer

10  was unable to continue paying rent and became homeless.

11      89.    Mr. Shafer has consistently searched for employment over the past six years.  He

12  goes to the One Stop in either Sutter or Yuba County three times a week to look for jobs.

13  Despite his best efforts, Mr. Shafer has been unable to find work and a sustainable income.

14      90.    Mr. Shafer currently lives with his wife in a tent on the River Bottoms in Sutter

15  County.  Mr. Shafer is doing everything he can to secure gainful employment and affordable

16  housing.  In the meantime, he fears that he and his wife will be cited and arrested for violating

17  the ordinance, even though he has no viable alternative space to sleep.

18                              **DEFENDANTS**

19      91.    Defendant Sutter County (the County) is a government entity with the capacity to

20  sue and be sued. The departments of the County include the Sutter County Sheriff.  Sutter

21  County, its employees and agents, participated in the unlawful conduct challenged herein, and to

22  the extent they did not personally participate, they authorized, acquiesced, set in motion, or failed

23  to take necessary steps to prevent the acts that results in the unlawful conduct and harm suffered

24  or that will be suffered by Plaintiffs. The acts complained of herein constitute policies, practices,

25  and customs of the County.

26      92.    Defendant City of Yuba City (Yuba City) is a government entity with the capacity

27  to sue and be sued.  The departments of Yuba City include the Police Department.  Yuba City

28  and its employees and agents, participated in the unlawful conduct challenged herein, and to the

COMPLAINT

1    extent they did not personally participate, they authorized, acquiesced, set in motion, or failed to

2    take necessary steps to prevent the acts that results in the unlawful conduct and harm suffered or

3    that will be suffered by Plaintiffs. The acts complained of herein constitute policies, practices,

4    and customs of Yuba City.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
Violation of Prohibition Against Cruel and Unusual Punishment
Eighth Amendments of the United States Constitution
California Constitution, Article 1, Section 17
[42 U.S.C. § 1983]
(against both Defendants)

10       93.     Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1

11   through 92.

12       94.     Defendant Sutter County has threatened to strictly enforce ordinance sections

13   475-010 through 475-050, which declare that it is unlawful for any person to camp, occupy camp

14   facilities, or use camp paraphernalia in Sutter County except in narrowly circumscribed

15   instances.

16       95.     Sutter County ordinance section 475-020 specifically prohibits the use of "camp

17   paraphernalia," which includes blankets and sleeping bags, and "camp facilities," defined as

18   "any form of cover or protection from the elements." By enforcing this law, Sutter County will

19   be depriving a portion of its citizens of protection from the rains, floods, and the cold.

20       96.     Yuba City has been enforcing its anti-camping ordinance found in Chapter 20, §§

21   5-20.030 through 5-20.060, which declare that it is unlawful for any person to camp on public

22   property or on private property without written permission.

23       97.     Section 5-20.020 broadly defines camping to include using property for living

24   accommodation purposes such as sleeping and includes using tents or living in a parked vehicle.

25       98.     The emergency beds and shelter housing available in Sutter County for the

26   homeless population are insufficient for the size of the homeless population in Sutter County.

27   Therefore, a large portion of County's homeless population must sleep outdoors. By

28   criminalizing camping, the County and Yuba City are preventing its homeless population from

COMPLAINT

1   carrying out one of the basic functions of survival: sleeping and staying dry and warm while

2   doing so, without breaking the law.

3         99.    Sutter County ordinance section 475-010 stated that, in addition to regulating

4   camping, it would "provide a temporary homeless shelter for transient or homeless individuals,"

5   however it has not done so.

6         100.   The only camping option offered by Defendant Sutter County is a campsite that

7   requires a daily fee.  Because many of the homeless population in Sutter County are indigent,

8   they are unable to afford the fees and thus cannot avail themselves of this location.  Yuba City

9   provides no homeless shelter for its residents.

10        101.   Therefore, the homeless population in Sutter County must choose between

11   sleeping outdoors exposed to the elements, significantly increasing the risk to health, or breaking

12   the law and using "camping" paraphernalia such as blankets or tents to survive.

13        102.   Punishment for involuntary acts arising out of the status of homelessness

14   constitutes cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution

15   and Article 1, section 17 of the California Constitution.

16        103.   Plaintiffs have no adequate remedy at law and are therefore entitled to injunctive,

17   declaratory, and other equitable relief.  Plaintiffs are also entitled to attorneys' fees and costs.

18   **SECOND CAUSE OF ACTION**
Unreasonable Search and Seizure

19   Fourth Amendment of the United States Constitution
California Constitution, Article 1, Section 13

20   [42 U.S.C. § 1983]
(against both Defendants)

21

22        104.   Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1

23   through 103.

24        105.   Plaintiffs possess property that holds both monetary and personal value.  Plaintiffs

25   have an expectation to be free from meaningful interference with their property rights, even if

26   their property is stored on public property.

27

28

1    106.    Sutter County ordinance sections 475-010 through 575-015 contain no limitations,

2    and therefore permits, seizure and destruction of private property even if the property poses no

3    threat to public health and does not constitute evidence of a crime.

4    107.    The written thirty-day notice provided to Plaintiffs states that any property found

5    in violation of the anti-camping law will be automatically treated as abandoned.  This open-

6    ended seizure policy fails to separate between property clearly owned and property that is

7    abandoned.  As a result, Defendant Sutter County is automatically and unlawfully categorizing a

8    whole segment of private property as abandoned.

9    108.    Yuba City ordinance sections 5-20.010 through 5-20.060 contain no limitations

10   and therefore permits, seizure and destruction of private property even if the property poses no

11   threat to public health and does not constitute evidence of a crime.

12   109.    Seizure of private property without a warrant constitutes an infringement upon

13   Plaintiffs' Fourth Amendment rights under the U.S. Constitution and violates Article 1, Section

14   13 of the California Constitution.

15   110.    Plaintiffs have no adequate remedy at law and are therefore entitled to injunctive,

16   declaratory, and other equitable relief.  Plaintiffs are also entitled to attorneys' fees and costs.

17                                   **THIRD CAUSE OF ACTION**

18                              Deprivation of Procedural Due Process
                         Fourteenth Amendment of the United States Constitution
19                              California Constitution, Article 1, Section 7
                                          [42 U.S.C. § 1983]
20                                    (against both Defendants)

21   111.    Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1

22   through 110.

23   112.    Sutter County ordinance sections 475-010 through 475-050 deprive citizens of

24   due process by authorizing Sutter County to summarily destroy property without notice and

25   without an opportunity to be heard.

26   113.    Sutter County distributed a written notice to the homeless population in Sutter

27   County, including the majority of Plaintiffs, which stated that "[a]ny camps or property left in

28   this area in violation of the law will be subject to seizure as abandoned property and will be

disposed of accordingly."  The notice fails to include a process to challenge collection of the seized property or to challenge the categorization of the property as "abandoned."  Defendant has not provided any other document to Plaintiffs indicating that such remedies would be available.

114.    Sutter County also fails to provide proper notice of the proposed seizure.  The notice is undated and was distributed on multiple dates, making it impossible to take reasonable steps in advance of enforcement.

115.    Furthermore, affected residents cannot understand the basis for having their property rights threatened because the issued notice by Sutter County lists the incorrect section of the Sutter County Ordinance Code.  The anti-camping law at issue is Sutter County ordinance sections 475-010 through 475-050.  The written notice provided to citizens threatens criminal prosecution and property seizure for violations of Sutter County Ordinance Code Chapter 475-1640, which is not an anti-camping provision.

116.    Yuba City's ordinance sections 5-20.010 through 5-20-0160 contain no provisions regarding disposition of property owned by Sutter County residents who may be cited and arrested for violation of the anti-camping ordinance.  The ordinance fails to provide notice in advance of the seizure of private property or procedures for return of that property post-seizure.  Failure to provide pre- or post-deprivation procedures violates the Fourteenth Amendment of the U.S. Constitution and Article 1, Section 7 of the California Constitution.

117.    Plaintiffs have no adequate remedy at law and are therefore entitled to injunctive, declaratory, and other equitable relief.  Plaintiffs are also entitled to attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
Violation of Privacy Rights
Fourteenth Amendment of the United States Constitution
California Constitution, Article 1, Section 7
[42 U.S.C. § 1983]
(against both Defendants)

118.    Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 117.

119.    Sutter County ordinance sections 475-010 through 475-050 prohibit the use of any form of shelter from the elements, which necessarily also prohibits any covering to protect

COMPLAINT

the privacy of one's living arrangements.  This effectively forces the homeless population to live and sleep outdoors without being able to shield their property and their intimate living arrangements from being seen by the public.

120.    Similarly, Yuba City ordinance sections 5-20.010 through 5-20-060 prohibit the use of any form of shelter from the elements, which necessarily also prohibits any covering to protect the privacy of one's living arrangements.  This effectively forces the homeless population to live and sleep outdoors without being able to shield their property and their intimate living arrangements from being seen by the public.

121.    Plaintiffs view their current tents and shelters as their home.  As such, Plaintiffs use that space as any other citizen would use their home, storing their possessions there as well as eating, sleeping, and conducting acts of a personal nature in there.

122.    By prohibiting the use of "camping facilities" or "camp paraphernalia," the Defendants are forcing citizens to live their lives exposed to the public without regard for their privacy or sense of decency.   Doing so violates the Fourteenth Amendment of the U.S. Constitution and Article 1, Section 7 of the California Constitution.

123.    Plaintiffs have no adequate remedy at law and are therefore entitled to injunctive, declaratory, and other equitable relief.  Plaintiffs are also entitled to attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
State Created Danger
Fourteenth Amendment of the United States Constitution
California Constitution, Article 1, Section 7
[42 U.S.C. § 1983]
(against Sutter County)

124.    Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 123.

125.    Under the Substantive Due Process Clause of the Fourteenth Amendment and Article 1, Section 7 of the California Constitution, the state deprives a person of a substantive due process right if it affirmatively places the person in a position of danger.

126.    Defendant Sutter County has notified Plaintiffs that they will be enforcing the ordinance and will treat property left as abandoned.  If the ordinance is enforced, Plaintiffs will

COMPLAINT

lose their possessions, including their only shelter from the elements.  Without any other available option for shelter, Plaintiffs will be forced to live exposed to the elements, including exposure to the cold, wind, and rain.  All Plaintiffs' physical health will be jeopardized if forced to sleep with no protection from the cold, wind, and rain.  Plaintiffs with mental health disabilities are likely to suffer heightened mental health symptoms and psychological damage. Plaintiffs with physical disabilities will have their health conditions exacerbated by exposure to the cold, wet, and wind.

127.    In the absence of Defendant Sutter County's affirmative decision to enforce the ordinance despite the lack of alternative shelter, Plaintiffs would not be exposed to these highly dangerous situations as they currently have some element of protection through their ability to live in their encampments, or their vehicles.  Defendant knows or reasonably should know that its actions would create these threats to Plaintiffs' health and safety.

128.    Defendant's willingness to deliberately expose its residents to danger is evidenced by its earlier actions of affirmatively removing the knobs from the water spigots at Whiteaker Hall for the purpose of depriving homeless individuals of potable water, despite knowing that many of these individuals had come to rely on the water available at Whiteaker Hall as their primary source of drinking water.

129.    As a result of Defendant's earlier actions, many homeless individuals, including Plaintiffs, have gone without access to water, including during the hottest months of summer. On information and belief, at least one homeless individual died, at least in part as a result of being unable to access water at Whiteaker Hall.

130.    Defendant knew or reasonably should have known that its actions would create these threats to Plaintiffs' health and safety.

131.    Defendant is acting with reckless disregard or deliberate indifference to the dangers they are creating for Plaintiffs if it enforces the Sutter County anti-camping ordinance because Defendant knows or should know that Plaintiffs and other homeless individuals rely on their "camping paraphernalia" to stay physically safe from the elements.  This violates Plaintiffs' substantive due process rights under the Fourteenth Amendment to the U.S. Constitution.

COMPLAINT

132.    Plaintiffs have no adequate remedy at law and are therefore entitled to injunctive, declaratory, and other equitable relief. Plaintiffs are also entitled to attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
Void for Vagueness
Fourteenth Amendment of the United States Constitution
California Constitution, Article 1, Section 7
[42 U.S.C. § 1983]
(against both Defendants)

133.    Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 132.

134.    Sutter County ordinance sections 475-010 through 475-050 are unconstitutionally vague as they do not adequately define the circumstances in which an individual would be in violation of the ordinance.

135.    The ordinance does not adequately define "camp facilities" or "camp paraphernalia" because it expressly states that the definitions are not limited to the lists provided within the ordinance.  This gives law enforcement unlimited discretion to determine what is a violation of the law.

136.    The ordinance makes it illegal to use either "camp facilities" or "camp paraphernalia" on either public or private property, except in limited circumstances:

1. Such use is authorized by the property owner; is limited to the property owner's family and friends; and, does not exceed one night in duration; or
2. Such use is normally associated with, and incidental to, the lawful and authorized use of private property for residential or other purposes; or
3. Such use is expressly authorized by the Sutter County Zoning Code or other laws, ordinances, and/or regulations.

137.    The term "friends" in exception (1) is not defined and therefore unconstitutionally vague as to which individuals a property owner may or may not allow to camp on their property.

138.    The second exception is left undefined and leaves potential violators to guess as to what types of use are incidental to their property.  This is especially important in rural counties where many property owners own large plots of land that they may use for a wide variety of purposes.

139.    Yuba City's ordinance defines camping broadly as storing personal belongings,

COMPLAINT

26

1  including "but not limited to clothing, sleeping bags, bedrolls, blankets, sheets, luggage,

2  backpacks, kitchen utensils, cookware and similar material," a definition that is so broad that it

3  gives law enforcement unlimited discretion to determine what violates the ordinance.

4      140.    The vagueness of both ordinances is such that they are facially invalid under the

5  Fourteenth Amendment of the U.S. Constitution and Article 1, Section 7 of the California

6  Constitution, and therefore void.  The ordinances violate Plaintiffs' constitutional rights and

7  Plaintiffs are entitled to declaratory and injunctive relief, as well as reasonable attorney's fees.

8  **SEVENTH CAUSE OF ACTION**<br>Disability Discrimination

9  [Cal. Gov. Code § 11135]<br>(against both Defendants)

10

11      141.    Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1

12  through 140.

13      142.    California Government Code Section 11135 states in relevant part that:

14      No person in the State of California shall, on the basis of…mental disability,
physical disability, [or] medical condition…be unlawfully denied full and equal

15      access to the benefits of, or be unlawfully subjected to discrimination under, any
program or activity that is conducted, operated, or administered by the state or by

16      any state agency, is funded directly by the state, or receives any financial
assistance from the state.

17

18      143.    Upon information and belief, Sutter County and its departments, including

19  Sheriff's Department receive funds from the State of California.

20      144.    Upon information and belief, the City of Yuba City and its departments, including

21  the Police Department receive funds from the State of California.

22      145.    In enforcing their respective ordinances, Defendants are participating in an

23  activity as contemplated by California Government Code section 11135(a).

24      146.    Sutter County admitted in the October 24, 2017 Board of Supervisors meeting

25  that majority of homeless individuals have a mental or physical disability, or a medical

26  condition.  Sutter County's survey found that 73 percent of the homeless population has a

27  disability or chronic medical condition.  Homeless individuals are, by virtue of their status, more

28  likely to be cited and arrested under the ordinance.  Because the majority of homeless individuals

COMPLAINT

in Sutter County are disabled, either mentally or physically, or suffer from a medical condition, the ordinance will disproportionately impact disabled individuals in violation of Government Code Section § 11135.

147.    Since Yuba City is part of Sutter County, upon information and belief, the majority of homeless individuals likely to be cited under Yuba City's ordinance also have a mental or physical disability.  Accordingly, Yuba City's ordinance will likewise have a disproportionate impact on disabled individuals.

148.    The ordinances discriminate against Plaintiffs and similarly situated individuals in violation of California law.  Plaintiffs are entitled to declaratory and injunctive relief, as well as reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for relief against Defendants as follows:

1.    For a permanent injunction, enjoining and restraining Defendant Sutter County from citing or arresting individuals for violation of ordinance sections 475-010 through 475-050.

2.    For a permanent injunction enjoining and restraining Defendant Yuba City from citing or arrest individuals for violation of ordinance sections 5-20.10 through 5-20.060.

3.    For a permanent injunction enjoining and restraining Defendants from seizing and disposing of individual's property in violation of their Fourth and Fourteenth amendment rights.

4.    For a permanent injunction enjoining and restraining Defendants from enforcing their ordinances in violation of California Government Code section 11135.

5.    For declaratory judgment that Defendants' policies, practices, and conduct as alleged herein violate Plaintiffs' rights under the United States Constitution.

6.    For declaratory judgment that Defendants' ordinances are unconstitutionally vague.

7.    For costs of suit and attorney's fees as provided by law.

8.    For such other relief as the court deems just and proper.

///

COMPLAINT

Dated:  March 9, 2018          CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
                               SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


                               By:    /s/Laura Clauson Ferree
                                      Attorneys for Plaintiffs

COMPLAINT