UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE JEREMIAH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SUTTER COUNTY, and CITY OF YUBA CITY,<br><br>Defendants. | No. 2:18-cv-00522-TLN-KJN<br><br>**ORDER** |

This matter is before the Court on Plaintiffs Joyce Jeremiah, Betty Lane, Pauline Flack, Sarah Juarez, Beth Martin, Robert McMullen II, Ria Hagan, Andrew Blackburn, Michael Rose, and Barton Shafer's (collectively "Plaintiffs") *Ex Parte* Motion for Temporary Restraining Order. (ECF No. 14.) Plaintiffs seek the temporary restraining order solely against Defendant Sutter County. For the reasons set forth below, the Court hereby GRANTS Plaintiffs' *Ex Parte* Motion for Temporary Restraining Order. (ECF No. 14.)

**I.  FACTUAL BACKGROUND**

This case arises out of Sutter County Ordinance 1640 ("the Ordinance") as adopted on October 10, 2017. (Compl., ECF No. 1 ¶ 9.) The purpose of the Ordinance is to regulate camping in the unincorporated areas of Sutter County and provide temporary homeless shelters.

(ECF No. 15-1 at 2.)[1]  The reason stated for the Ordinance is to promote the public health, safety, and general welfare.  (ECF No. 15-1 at 2.)  The Ordinance reads in relevant part:

**475-030 - NUISANCE DECLARED**

Camping in violation of this Chapter is hereby declared, by its very existence, to be a public nuisance.

(1) *Unlawful Camping*: It is unlawful and a public nuisance for any person to Camp, occupy Camp Facilities or use Camp Paraphernalia in the following areas:

a. Any Public Property except as provided in Section 475-040, or otherwise provided by ordinance;

b. Any private property unless:

1. Such use is authorized by the property owner; is limited to the property owner's family and friends; and, does not exceed one night in duration; or

2. Such use is normally associated with, and incidental to, the lawful and authorized use of private property for residential or other purposes; or

3. Such use is expressly authorized by the Sutter County Zoning Code or other laws, ordinances, and/or regulations.

(2) *Unlawful Storage*: Except as authorized by permit pursuant to this section or otherwise provided by ordinance, it shall be unlawful for any person to store personal property, including Camp Facilities and/or Camp Paraphernalia, in any Park or public place.

(3) *Violation—Penalties*: Any person violating any of the provisions of this section shall be guilty of: (1) An infraction for the first offense which shall be punishable by a fine not to exceed fifty dollars ($50.00); (2) An infraction for the second offense which shall be punishable by a fine not to exceed seventy and five dollars ($75.00); and, (3) An infraction or misdemeanor for any subsequent offense which, upon conviction, shall be punishable by a fine not to exceed one hundred dollars ($100.00), by imprisonment in the County Jail not to exceed six months or by both such fine and imprisonment.

(ECF No. 15-1 at 2–3.)  The Ordinance defines camping, camp facilities, and camping

---

[1] Plaintiffs request the Court take Judicial Notice of four documents: (1) Sutter County Ordinance Number 1640; (2) Sutter County's Proposed Homeless Management Plan Dated October 24, 2017; (3) Sutter County Board of Supervisors Minutes from October 24, 2017; and (4) 2013-2021 Sutter County General Plain: Housing.  (ECF No. 15 at 2.)  Under Federal Rule of Evidence 201 a court can take judicial notice of a document when the subject "can be accurately and readily determined from the sources whose accuracy cannot reasonably be questioned." For the reasons stated in Plaintiffs' request, the Court GRANTS Plaintiffs' request, and takes judicial notice of the attached exhibits pursuant to Federal Rule of Evidence 201 (ECF No. 15).

paraphernalia as:

> Camp or Camping means the erecting of, or occupying, Camp Facilities for the intended or apparent purpose of overnight occupancy; to use Camp Paraphernalia. *Camper* means one engaged in the act of Camping.
>
> Camp *Facilities* include, but are not limited to, tents, huts, temporary shelters, trailers, vehicles, or any form of cover or protection from the elements other than clothing.
>
> Camp *Paraphernalia* includes, but is not limited to, tarpaulins, cots, beds, blankets, bedding, bedrolls, mattresses, pads, sleeping bags, hammocks, lanterns, stoves, and similar equipment.

(ECF No. 15-1 at 2.)

At the October 24, 2017 board meeting, the Sutter County Board of Supervisors ("the Board") heard reports of a summary of findings regarding homelessness in Sutter County. (ECF No. 1 ¶ 11.) This report concluded 760 homeless individuals live in Sutter and Yuba Counties, approximately 331 of whom live in Sutter County. (ECF No. 1 ¶ 12.) Approximately 75% of the individuals in Sutter County were residents of the county before becoming homeless. (ECF No. 1 ¶ 13.) The study determined only 8% of Sutter County housing stock is available for rent and rental costs average $846.77 a month with initial move-in costs of $1,399.57. (ECF No. 1 ¶ 14.) Finally, the study concluded that approximately 73% of the homeless individuals suffered from at least one mental or physical disability or chronic health condition. (ECF No. 1 ¶ 15.)

During this meeting, County staff proposed repurposing an existing county-owned building known as "Whiteaker Hall" into a long-term homeless shelter. (ECF No. 1 ¶ 16.) Upon completion of the shelter, homeless residents would be relocated from the encampment at the river bottoms to the shelter. (ECF No. 1 ¶ 16.) The Board chose not to approve the proposed Whiteaker Hall shelter location. (ECF No. 1 ¶ 19.) Instead, the Board laid out a Homeless Management Plan which requested the staff recommend other possible shelter locations, placed limitations on the shelters, and "direct[ed] [the] Sheriff's Office 'to begin immediate enforcement of camping ordinance, regardless of consequences.'" (ECF No. 1 ¶ 19; ECF No. 15-3 at 8.)

Sutter County has failed to provide a temporary homeless shelter. (ECF No. 1 ¶ 20.) Beginning on or about December 6, 2017, Sutter County sheriff's deputies circulated an undated

notice to the homeless population in Sutter County citing ordinance 475-1640 stating enforcement of the notice will begin in 30 days. (ECF No. 1 ¶¶ 24–25.) The notice did not cite the correct ordinance and was circulated on multiple days making the time of enforcement uncertain. (ECF No. 1 ¶ 25.) The notice further stated any property left on public property after the end of the 30 days would be considered abandoned and disposed of accordingly. (ECF 1 ¶ 25.)

On March 8, 2018, Sutter County deputies circulated a new version of the notice that stated enforcement of the ordinance would begin in ten days. (ECF No. 1 ¶ 26.) The notice included a similar statement regarding property left on public property. (ECF No. 1 ¶ 26.)

Plaintiffs filed the instant action on March 9, 2018, after the issuance of the second notice alleging: (1) violation of the Eighth Amendment; (2) violation of the Fourth Amendment; (3) violation of the Fourteenth Amendment due process rights; (4) violation of the Fourteenth Amendment privacy rights; (5) violation of the Fourteenth Amendment state created danger; (6) violation of the Fourteenth Amendment void for vagueness; and (7) disability discrimination in violation of Cal. Gov. Code § 11135. (*See* ECF No. 1.) Simultaneously, Plaintiffs filed the instant motion for temporary restraining order, seeking to restrain the county from enforcing the Ordinance to evict, cite, or seize the property of homeless individuals. (ECF No. 14.) According to the terms of the notice, enforcement of the Ordinance shall go into effect on Sunday, March 18, 2018.

## II. STANDARD OF LAW

A temporary restraining order is an extraordinary and temporary "fix" that the court may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing. *See* Fed. R. Civ. P. 65. It is the practice of this district to construe a motion for temporary restraining order as a motion for preliminary injunction. Local Rule 231(a); *see also Aiello v. One West Bank*, No. 2:10-cv-0227- GEB-EFB, 2010 WL 406092 at *1 (E.D. Cal. Jan. 29, 2010) ("Temporary restraining orders are governed by the same standard applicable to preliminary injunctions.")

(internal quotation and citations omitted).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added); *see also Costa Mesa City Employee's Assn. v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial.") (internal quotation marks omitted); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.") (internal quotation marks omitted). In cases where the movant seeks to alter the status quo, preliminary injunction is disfavored and a higher level of scrutiny must apply. *Schrier v. University of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005). Preliminary injunction is not automatically denied simply because the movant seeks to alter the status quo, but instead the movant must meet heightened scrutiny. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits...so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, Plaintiff must demonstrate, "that [if] serious questions going to

the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's favor," in order to succeed in a request for preliminary injunction. *Id.* at 1134–35 (emphasis added).

### III. ANALYSIS

#### A. Likelihood of Success on the Merits

##### i. *Fourteenth Amendment: Deprivation of Procedural Due Process*

Plaintiff alleges the Ordinance violates its procedural due process rights by authorizing Sutter County to summarily destroy property without adequate notice and without an opportunity to be heard. (ECF No. 1 ¶ 112.) Plaintiff argues due process does not exist under the Ordinance because the Ordinance does not provide a pre-deprivation hearing or sufficient notice prior to deprivation. (ECF No. 14-1 at 18.)

Under the Fourteenth Amendment to the United States Constitution, "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of laws." U.S. CONST. AMEND. XIV. "Plaintiffs' personal possessions, which in many cases represent most of what they own, undoubtedly constitute 'property' for purposes of constitutional analysis." *Kincaid v. City of Fresno*, No. 1:06-cv-1445 OWW SMS, 2006 WL 3542732, at *37 (E.D. Cal. Dec. 8, 2006). "Before the government seizes an individual's property, even temporarily, it must provide notice and an opportunity to be heard prior to the seizure, except in 'extraordinary situations where some valid governmental interest is at stake that justifies the postponing of the hearing after the event.'" *Id.* Notice is not dependent on the value of the property. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993).

The Court has reviewed Plaintiffs' declarations and Plaintiffs' arguments as to why the notice provided is problematic. However, as the court noted in *Kincaid*, Plaintiffs must be "provided notice *and* an opportunity to be heard prior to seizure," or at the very least a post-deprivation process justified by the governmental interest at stake. *Kincaid*, 2006 WL 3542732, at *37 (emphasis added). Based on the limited evidence before this Court, Plaintiffs do not appear to be afforded the opportunity for a pre-deprivation hearing. Nor is it entirely clear what, if any, governmental interest is at stake that justifies a post-deprivation hearing. Even if such an interest exists, it does not appear that Sutter County, the Ordinance or the notice contemplates any

post-deprivation hearing. Consequently, at a minimum, Plaintiffs have raised serious questions as to whether enforcement of the Ordinance in this manner would violate procedural due process.

*ii.     Fourteenth Amendment: State Created Danger*

Plaintiffs allege Sutter County violated their substantive due process rights when it affirmatively placed them in a position of danger. (ECF No. 1 ¶ 127.) Plaintiffs assert leaving Plaintiffs without their shelters places them in a higher risk of danger because they are prohibited under the Ordinance from using any "form of cover or protection from the elements." (ECF No. 15-1 at 2.)

There is no fundamental right to housing. *Lindsey v. Normet*, 405 U.S. 56, 92 (1972). However, the Ninth Circuit recognizes liability under substantive due process where a state or local official acts to place a person in a situation of known danger with deliberate indifference to their personal and physical safety. *Kennedy v. City of Ridgefield*, 439 F. 3d 1055 (9th Cir. 2006). "In examining whether an officer affirmatively places an individual in danger, [a court does] not look solely to the agency of the individual, nor [should it rest its] opinion on what options may or may not have been available to the individual. Instead, [the court] must examine whether the officer left the person in a situation that was more dangerous than the one in which they found him." *Id.* at 1062.

The Court looks to the limited evidence before it: Plaintiffs' declarations. From the declarations it is clear that Plaintiffs fear for their safety if they lose their shelter. Plaintiffs discuss the recent wind, rain, and cold weather. (ECF No. 14-8 ¶ 12; ECF No. 14-14 ¶ 11; ECF No. 14-15 ¶ 12; ECF No. 14-16 ¶ 9; ECF No. 14-17 ¶ 9.) Additionally, Plaintiffs allege the County has taken efforts in the past to remove essential needs from Plaintiffs such as removing water spigots and should know that Plaintiffs rely on their camping paraphernalia to stay physically safe from the elements. (ECF No. 1 ¶¶ 128 & 131.) Sutter County is aware of the winter weather and waited from the October meeting until December and March to enforce the Ordinance. Based on the limited evidence presented at this time and the County's inability to respond, the Court finds that Sutter County would knowingly place the homeless at increased risk of harm if it confiscates and seizes Plaintiffs' shelters and possessions.

7

B. <u>Irreparable Harm</u>

The Ninth Circuit has held that "an alleged constitutional infringement will often alone constitute irreparable harm." *Associated Gen. Contractors of Cal., Inc. v. Coalition of Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991). Plaintiffs have shown the likelihood of future constitutional violations, namely deprivation of property in violation of the Fourteenth Amendment and being placed in a position of danger in violation of their substantive due process rights. Accordingly, the Court finds that Plaintiffs have demonstrated that irreparable harm will result in the absence of a temporary restraining order.

C. <u>Balancing of Equities and the Public Interest</u>

"The purpose of preliminary injunctive relief is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined." *Heflebower v. U.S. Bank Nat. Ass'n*, No. CV F 13–1121 LJO MJS, 2013 WL 3864214, at *18 (E.D.Cal. July 23, 2013) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). A court balancing the equities will look to possible harm that could befall either party. *See CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009) *aff'd*, 348 Fed. Appx. 288 (9th Cir. 2009). Here, the Court notes the possible harm in temporarily restraining the enforcement of the Ordinance will hamper the County's ability to promote the public health, safety, and general welfare. However the County's interest in cleaning up the river bottoms is outweighed by Plaintiffs' interest in their personal property and their constitutional rights. *See Lavan*, 797 F. Supp. 2d at 119 (finding the City's interest in clean streets is outweighed by the Plaintiffs' interest in maintaining the few possessions they have). Furthermore, Courts have found there is a strong "pubic interest in maintaining the protection afforded by the constitution to those most in need of such protections." *Cobine v. City of Eureka*, 2016 WL 1730084, at *7 (N.D. Cal. May 2, 2016.) Clearly Plaintiffs, homeless individuals unable to afford adequate housing, are persons who "most in need of such protections."

The Court finds the balance of equities tips in favor of Plaintiffs and the public interest is served by the issuance of an injunction.

8

D.  Bond

The Court waives the discretionary bond requirement set forth in Federal Rule of Civil Procedure 65(c).  *See Governing Council of Pinoleville Indian Community v. Mendocino Cnty.*, 684 F. Supp. 1042, 1047 (N.D. Cal. 1988) (citing *People of California v. Tahoe Regional Planning Agency*, 766 F. 2d 1319, 1325–26 (9th Cir. 1985)) ("[C]ourts have discretion to excuse the bond requirement....").  Plaintiffs are homeless individuals who are unable to afford adequate housing and to require bonds would place them in a further position of hardship.

## IV. STATUS OF PLAINTIFFS

Plaintiffs have all filed separate motions to proceed *in forma pauperis*.  (ECF Nos. 3–12.) The Court has carefully reviewed the documentation provided by the Plaintiffs and finds that the requirements are met.  Accordingly, Plaintiffs' motions to proceed *in forma pauperis* are hereby GRANTED.

## V. CONCLUSION

For the reasons set forth above, the Court hereby issues a Temporary Restraining Order. Defendant Sutter County, and all of its officers, agents, employees, and attorneys, and all personas acting under their direction and control, are hereby ENJOINED and RESTRAINED from:

1. Attempting to enforce Ordinance No. 1640, Sutter County Ordinance Code Sections 475-010 to 475-050.
2. Attempting to seize and/or destroy property that they know or reasonably should know belongs to homeless persons in Sutter County.

This order shall remain in effect until 5 p.m., Thursday, April 5, 2018, unless modified by the Court before that time, or extended by the Court to continue in effect thereafter.

IT IS FURTHER ORDERED that Defendant Sutter County is hereby ORDERED to SHOW CAUSE by 5 p.m., Thursday, March 22, 2018, as to why Defendant and all of its officers, agents, employees, attorneys, and all persons under their direction and control, should not be restrained and enjoined.  Plaintiffs may file a response or opposition no later than 5 p.m., Thursday, March 29, 2018.  A hearing on the Order to Show Cause shall be held on Thursday,

April 5, 2018, at 1:30 p.m. in Courtroom 2.

IT IS SO ORDERED.

Dated: March 16, 2018

_____
Troy L. Nunley
United States District Judge